Daniel A. Haymes, Appellee, v. City of Chicago, Appellant.

Gen. No: 37,600.

Opinion filed April 1, 1935.   Rehearing denied April 15, 1935.

WILLIAM H. SEXTON, Corporation Counsel, and ALEXANDER M. SMIETANKA, City Attorney, for appellant; QUIN O'BRIEN and ADAM E. PATTERSON, Assistant Corporation Counsel, of counsel.

Irving N. Stenn and McKenna, Harris & Schneider, all of Chicago, for appellee; Abraham W. Brussell, of Chicago, of counsel.

Mr. Justice Matchett delivered the opinion of the court.

In the afternoon of January 23, 1931, plaintiff, while walking from the Sherman hotel where he worked to his home at 1260 North Dearborn street, slipped and fell, breaking his left leg and sustaining severe injuries. The accident occurred on the west side of the street adjacent to the building known as 408 North Dearborn street, near an alley intersecting the street at this point. The sidewalk was covered with snow which fell that morning.

Plaintiff sued the city, filing a declaration of two counts which in substance alleged that defendant negligently permitted an obstruction of snow and ice to form upon the sidewalk and permitted the sidewalk to remain so obstructed. Defendant filed a plea of the general issue, with a special plea of noncontrol of the instrumentality causing the injury. There was a trial by jury, a motion by defendant at the close of all the evidence for an instructed verdict in its favor, which was denied, and thereupon a verdict for plaintiff in the sum of $3,000, on which the court, overruling motions for a new trial and in arrest, entered judgment. Some of the reasons urged for reversal we will not discuss at length, although we have given consideration to them without finding reversible error. These are that the statutory legal notice was deficient and not in fact received in evidence; that the court erred in permitting expert witnesses to give answers invading the province of the jury, and that there was error in the giving and refusing of instructions.

We pass from these to the controlling question in the case, namely, whether the court erred in refusing to

direct a verdict for defendant at the close of all the evidence.

There is little conflict in the evidence. Plaintiff and two other witnesses testified to the occurrence, and these and other witnesses testified as to the condition of the sidewalk and building before and at the time of the accident.

Plaintiff says that he walked at his usual brisk rate, paid no attention to the snow covering the sidewalk and noticed nothing unusual about it. It was a little after noon; he had passed the building at other times and it seemed to be unoccupied; as he was walking in a northerly direction and a few feet from the alley his feet flew from under him, and he fell on his spine and on his head; he was bleeding and his left leg was broken. He says he noticed his overcoat had brushed the snow off the sidewalk, disclosing a streak of ice thereunder, upon which he had slipped.

Mr. Ritter, a salesman driving in this vicinity, picked up plaintiff and took him home in his automobile. Ritter testified he noticed the icy condition of the sidewalk; that it was icy within a foot or two of the edge of the alley; that there was an icy patch which was narrower at the building line than at the edge of the curb; at the building line it covered a space of perhaps a half foot, at the sidewalk, two or three feet, and at the curbing four or four and a half feet. The sidewalk slanted toward the street. He identified defendant's Exhibit 1 as a true representation of the premises and the sidewalk, disregarding, however, the ice. The temperature on this day was about at the freezing point. He noticed a crack at the building line that had formed a sort of trough which allowed the water to drain down on the sidewalk. He also noticed a crack which extended from the roof down to the sidewalk line and which was about 30 or 35 feet in length and about two to three and a half inches wide at the top, dwindling down to about an inch

and three-quarters at the center of the building and about nothing at the sidewalk line and stopping below the sidewalk. He says he had passed this place about three days previous to the accident. The building seemed deserted and ice and snow were on the sidewalk.

A witness named Heizer testified he was in the vicinity of the accident two or three times a week from the first of the year until February 12th; that the general condition of the street was slippery; that on January 10th, 11th and 12th the building was covered with ice and icicles. About that time he, the witness, slipped and fell upon the ice and found it to be rough ice, about a foot wide next to the building and probably three to five feet wide and four or five inches high at the sidewalk. He also testified that there were cracks in the side of the building and icicles on top of the firewall and on a ridge three or four feet above the doorway.

Mr. Naines, who took care of the building, testified for defendant that he saw the building and the sidewalk January 23, 1931, and that the same were in good condition. There was, he says, a crack above the door which zigzagged a little and ran down, the crack had been filled up and painted red years before, and there was another crack between the ledge and the second or third floor, about a foot north of the first one.

There is much conflict of authority in courts of different jurisdictions on the question of when a city is liable by reason of the presence of ice and snow upon its sidewalks. The cases are collected and classified in a note to *Bailey v. Oil City,* 80 A. L. R. 1148, which is supplementary to a similar note in 13 A. L. R. 17. The subject matter of these notes excludes cases where the condition caused by ice and snow concurs with a defect in the sidewalk.

The subject has received consideration by the courts of this State in *Graham v. City of Chicago,* 260 Ill. App. 590, affirmed 346 Ill. 638, where the cases in this and

other jurisdictions are cited and analyzed. In that case the city negligently permitted water from an adjacent playground to flow over and upon a sidewalk. The water froze, causing the surface of the sidewalk to become slippery and unsafe. The city allowed the sidewalk to remain in that condition for 13 days. A judgment for plaintiff was affirmed. This court, citing *Hubbard v. City of Wood River,* 244 Ill. App. 414, approved of a statement there made that the presence of hills and ridges of ice and snow were not necessary conditions precedent to a city's liability. The opinion further states:

"Here, the liability of defendant is predicated upon the affirmative act of the defendant through its agents in causing the overflow of the skating pond so as to cause an icy strip across the sidewalk. Manifestly, the situation does not come within the rule that the city will not be liable for icy and slippery conditions which are general. Here, the slippery condition was occasioned by the careless manner in which the skating pond was flooded across the sidewalk. Under such circumstances the city must be held responsible." The Supreme Court affirmed the Appellate Court. *Graham v. City of Chicago,* 346 Ill. 638. The court said there was one rule which was "almost" universal. This rule is that a city is not liable for injuries resulting from the general slippery condition of its streets and sidewalks due to the presence of ice and snow which had accumulated as a result of natural causes. A contrary rule, the opinion says, would be unreasonable in this latitude and climate. It is pointed out that some jurisdictions, on the contrary, hold that it is immaterial whether the slipperiness is caused by natural or artificial means and cases from those jurisdictions are cited. However, without analyzing these cases the Supreme Court said that the rule exempting cities from such liability was based on necessity, and continued:

"But the rule must be predicated on the formation of ice from natural causes, for it would be neither unreasonable, impracticable nor expensive, as a general proposition, to compel the removal of ice from sidewalks which was produced by artificial causes." The opinion also considers cases in which ice formed on the sidewalk from the freezing of water from downspouts and points out that in those cases it was not claimed that liability arose from diverting the flow of rainfall but because ice had formed in an artificial and unnatural way and the city had neglected to make the condition reasonably safe.

In the instant case the ice upon which plaintiff fell was not formed in an artificial but, on the contrary, in a natural way. No human agency for the City of Chicago is responsible and proximately contributed to the condition of the sidewalk which brought about plaintiff's fall. If it had not been for the snow, the ice would not have been necessarily dangerous and the fall could have been avoided by the exercise of due care. We think it may not be said under the evidence (assuming the existence of the cracks in the building to which some of the witnesses testified) that the cracks were brought about artificially by any agency for which defendant city should be required to respond in damages.

We hold the rule of nonliability for conditions which are the result of natural causes precludes a recovery here. The evidence does not bring plaintiff's case within any recognized exception to that rule. For this reason the instruction in its favor requested by defendant at the close of all the evidence should have been given.

For the error in that respect the judgment is reversed.

*Reversed.*

O'CONNOR, P. J., and McSURELY, J., concur.